The court now calls 116799, People of the State of Illinois v. Keith W. LeFlore. The party is ready to proceed. Proceed. Good morning, Your Honors, and may it please the courts. I'm Eldad Malamuth from the Illinois Attorney General's Office on behalf of the appellant, the People of the State of Illinois. The people ask this court to reverse that portion of the appellate court's judgment, vacating the trial court's order denying defendant's motion to suppress. At issue in the suppression motion was the use, for one day, of a global positioning system, a GPS device, to track the movement of a vehicle associated with defendant on public roads, evidence from which was used to convict a defendant for aggravated robbery. Now, for three reasons, each independently sufficient, this court should reverse. One, at the time of the search, defendant was on mandatory supervised release, MSR. In other words, defendant was a parolee. And this court and the United States Supreme Court have made clear that warrantless, suspicionless searches of parolees are reasonable. Second, defendant did not meet his burden at the suppression hearing of establishing a sufficient Fourth Amendment interest to contest the search. And third, even if defendant had established such an interest, and even if the search were now deemed to be unreasonable, at the time precedent authorized the police conduct. And so the good faith exception to the exclusionary rule would apply. Turning towards the first reason for reversal, defendant's parolee status. Generally, the Fourth Amendment prohibits warrantless searches of people and their effects because those searches are deemed unreasonable. But there are exceptions, including one decisive here, that warrantless, suspicionless searches of parolees are reasonable. When determining whether a Fourth Amendment search is reasonable, we weigh, on the one hand, the degree to which the legitimate privacy interests of an individual are intruded upon, and the other, the degree to which the search is needed to promote legitimate government interests. Now, the parolee status of defendant substantially impacts both sides of the balance because, among other reasons, defendant is still in the legal custody of the state. Because he has signed such an expansive consent to search provision, defendant does not have an expectation of privacy that society deems as legitimate. On the other hand, the government has substantial interest in conducting searches of parolees. That's to reduce recidivism and to promote the healthy reintegration of the parolee into society. And based on this, in the Samson case and the Wilson case, this Court and the United States Supreme Court have made clear that warrantless, suspicionless searches of parolees are reasonable. Now, defendant and the appellate court are wrong when they suggest that the Jones decision by the U.S. Supreme Court is to the contrary. At issue in Jones was whether the attachment of a GPS device to the outside of a vehicle and the use of that device to search the movement of a vehicle on public streets could be a Fourth Amendment search. And Jones answered in the affirmative, holding that because there was the physical trespass of the device on the vehicle, for the purpose of obtaining information, there was a Fourth Amendment search. But that's as far as Jones takes us. Jones expressly declined to determine in that case whether the search was reasonable. So Jones only answers the question whether there was a search here. Yes, there was a search here. Then we turn to ask whether the search was reasonable. And the answer that Samson and Wilson give us is yes. Now, the defendant also argues that the GPS search here should not fall under Wilson and Samson because it was potentially indefinite. There are two problems with that. One is that it was not indefinite. It lasted a single day. And we don't answer the question of Fourth Amendment reasonableness on what could have happened. We answer it based on what actually happened. And here, they placed the GPS device on the car. And the next day, early the next morning, there was the robbery. And, in fact, the evidence showed that they used the GPS device. They took the tracking information only for that one period when the robbery of the gas station occurred. Second, there are decades' worth of precedent from this court and the U.S. Supreme Court that the privacy interests in the movement of the vehicle on public roads is far less, or less at least, than the search of a person, such as was upheld in Samson, or the search of a residence, such as the search of a bedroom, that was upheld in Wilson. So there's no basis to distinguish Samson and Wilson based on the Jones or the GPS search. Second, the defendant argues that the electronic monitoring provision in his MSR agreement should distinguish Samson and Wilson. Now, the defendant, like all parolees, in order to get released, signs an MSR agreement, which sets forth various conditions for his release, including that he remain under the custody of the state, that he consent to all searches of his personal property. But doesn't that mean that he would know about the search first and then consent? Your Honor, it's certainly true that the agreement, the MSR agreement, is that he will consent to the search. And so a search without his consent might not be specifically agreed to by the MSR agreement. Could you repeat that? It might not be reached by the MSR? Right. The MSR agreement is that he shall consent to the search. The question here, though, is whether the search was reasonable under the Fourth Amendment. And the search provision is expansive. It does not limit when the search might take place, what government agent may conduct the search. And that informs the question of whether the search is reasonable under the Fourth Amendment. So the issue is about what specific searches he consented to or he agreed to under the MSR agreement and what searches are reasonable under the Fourth Amendment. Even with the MSR agreement, we look at Wilson. It seems that it's a two-step process. First, it's in the MSR, and then he must be notified to consent to it. I think that's a question of grace. No, Your Honor, that's not correct. Wilson does not give that two-step analysis. In Wilson, the State specifically conceded that the search was nonconsensual. In Wilson, the parole agent was not. I thought the exact line, it puts the parolee on notice that law enforcement officials may ask his consent to search. That's the end of the quote. Well, that's right. And that, again, informs what is reasonable under the Fourth Amendment. If we look to the facts of Wilson, in Wilson, the officers came to his residence. Another individual opened the door, and they saw the defendant opening his bedroom door. They didn't ask for his consent to search his bedroom. They simply held him while they searched the bedroom. And the State specifically conceded that it was not consensual. So not all searches of parolees have to be consensual. In Samson, we find the same thing. In Samson, they stopped an individual walking on the street, a parolee, and the officer searched him solely based on his parolee status. He did not consent to the search. To the contrary, he objected. But the United States Supreme Court said that he still had no expectation, legitimate expectation of privacy. That's the question. The question is not whether he's consented to this specific search. The question is whether it was unreasonable under the Fourth Amendment. So is a search of a parolee ever unreasonable? A search of a parolee is not – there might be some case out there that we could imagine where the issue isn't the absence or presence of a warrant. Here, there's no question that the search could have been conducted with a warrant. There are certain searches that might be so invasive of an individual that the issue isn't whether or not it could be – whether it was a warrant. So, for instance, if a bullet – there's a U.S. Supreme Court case where a bullet is lodged in a defendant's body and the state seeks to put him under general anesthesia, remove the bullet, and in that case, the U.S. Supreme Court said, well, that's – we're not going to make the defendant do that. But the issue there wasn't the absence or presence of a warrant. That was whether that was a reasonable search regardless of the level of suspicion, regardless of the presence of a warrant. So here, for parolees, there need never be suspicion, any level of suspicion, and there need never be a warrant for the search to be reasonable. Now – Even – you made a point of talking about how this tracking device, you know, was brought up something pretty quickly after it was installed. Would – under your analysis, would that – would it be appropriate to basically put a tracking device on this fellow for the whole time he's on MSR to see where he comes and goes? A GPS tracking device? Right. Your Honor, first, I do believe that under Wilson and Sampson, that would be – that would not be an unreasonable search under the Fourth Amendment. But regardless, even if we can imagine that there's some outlying case where he's subjected to a tracking device, where cameras, audio surveillance that's done with them all the time, and for that, at some point, we might say there should be some other sort of requirements of suspicion. That is simply not the case here. This is an easy case, the case that the GPS tracking device was on there for one day. That would likely not even constitute a search at all under the legitimate expectation of privacy test. And so here, there's really no question that there was no warrant requirement. Mr. Mammoth, on that, it's only for one day. That's only because the defendant was followed on a robbery within 24 hours. But needless to say, without a time frame, without a warrant, the defendant – that tracking device could have been on until such time in a week that he might have done something. Isn't that right? I mean, it just got lucky that it was within one day. Well, Your Honor. So to speak. Right, whether it's luck, whether it was perhaps repeated robberies. We don't know why it happened that very next day. But you keep on saying one day, but literally it could have been for two weeks. It could have been a month until such time something occurred. Your Honor, first of all, that is how you measure Fourth Amendment reasonableness. The retaliate circumstances takes the facts as they are, not the facts as they could be in some other case. And here the search lasted only for one day, and we have to assess the reasonableness of that one-day search. And moreover, even if it, again, had taken a week, a week is surely small enough that there wouldn't have needed a warrant to search a parolee. A single warrant can authorize a GPS tracking device for 30 days under the federal rules. I mean, a week is not a particularly long period. And so there would not need to be a warrant sought for the GPS search of a parolee for that period of time. With regard to the expectation of privacy, what do you have to say about that? Well, that question – The standing issue. The standing issue, that turns to the second purpose, the second reason for reversal, which is that the defendant did not meet his burden of establishing his Fourth Amendment interest at the suppression hearing. Now, the defendant concedes this. He concedes that he had the burden at the hearing. He concedes that he did not meet that burden. The defendant argues that he should get another bite of the apple because of the Jones case, that Jones provides a new test and that he should get a chance to satisfy this new test. But that argument fails for two reasons. First, as the defendant himself argues elsewhere in the brief, Jones was not a new test. And so that logic fails. Even if we were to assume that he should get a new hearing if there had been a new test, we don't have that situation here. Second, the evidence that he suggests that he would put forward at a new suppression hearing, his relationship with the vehicle owner, whether he secured a parking permit, all that was already relevant to the test which he said he pursued. It was already relevant whether he had any ownership or possessory interest in the vehicle. And so there's really no reason. Jones does not provide a reason to give him a second bite of the apple at the suppression issue. Now, turning to the third basis for reversal, the good faith exception. So even if he had shown an interest and even if the search were deemed unreasonable, the exclusionary rule would not apply because of the good faith exception. The Fourth Amendment says nothing about excluding evidence. Instead, the exclusionary rule is a prudential doctrine designed to deter police misconduct. And it only applies when police display deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. Here, there was a United States Supreme Court precedent authorizing the conduct. The Knotts and Caro cases stood for the proposition that police could use a tracking device to track a vehicle moving on public roads without conducting a Fourth Amendment search. Now, the defendant tries to distinguish Knotts and Caro by arguing that they did not deal with the trespass question. But the issue isn't whether they dealt with the trespass question. The issue is whether they authorized the police conduct. That's the question that Davis, the United States Supreme Court, said we have to ask. Was the officer conduct helpful? And the answer under this is no, because the conduct had been authorized. We also have the Seventh Circuit case at Garcia, which was on all fours. And it was a federal Seventh Circuit case. And this defendant argues that that case shouldn't apply to the good faith exception because it's a federal case. But the issue, again, is not whether... And he argues that, stating that this court is not bound by the Seventh Circuit's decision in Garcia. And that is, of course, true. But the issue is whether the police were deterred by Garcia. And state police officers are deterred by federal court precedent. They may be civilly liable for violating federal law. Prosecutions that they are involved in will then occur in federal courts. So they are deterred by federal court. And so the good federal court decisions and the good faith exceptions should apply based on that. Was Garcia overruled by Jones? Yes, Garcia was overruled by Jones. That's not contested here. And even if we disagree with your interpretation of Jones, does that... The Garcia-Jones situation, does that feed into an argument of the good faith exception? There's no argument here that the police conduct here wasn't covered under Garcia. And there's no argument that Garcia wasn't overturned by Jones. So regardless of the court's analysis of Jones, there's no issue as to whether the police conduct was covered, encompassed by Garcia. The only issue is whether federal court precedent should apply to state court officers for the purpose of exclusionary rule. Okay. So unless the court has further questions, the people ask this court to reverse that portion of the appellate court's judgment, vacating the trial court's denial of defendant's motion to suppress. Thank you. Thank you. May it please the court, counsel, Darren Miller on behalf of the appellee, Keith LaFleur. Excuse me, counsel. Make sure the light's off, please. Thank you. Percy. Yes, in the very early morning hours in April, about 3 or 4 in the morning, a police officer from Aurora snuck on to the parking lot for where the defendant lived and affixed a GPS tracking device without warrant, without cause, to a car that turns out to be owned by Mr. LaFleur's roommate, Stephanie Powell. That device was used. It was set. It was to track movements every 15 minutes, and there is no question that under Jones that this is an impermissible, unconstitutional search under the Jones Trust Act. Mr. Miller, can we start just where we left off with Mr. Mellon? I know it was right at the end, but I'm interested in that whole Garcia-Jones situation and whether or not your position is the federal precedent shouldn't apply to police officers for the purpose of the exclusionary rule, right? You're talking about the good faith? Yeah. Well, our position for that is under Davis it applies to binding precedent, and there was no binding precedent in this case. The Knatson-Caro-Bieber cases, nothing in there was binding for GPS tracking when there's a trespass. In fact, the Jones case distinguished those cases. So Davis is limited to good faith reliance on binding precedent, not a good faith extension of precedent, and there is no binding precedent in the Garcia case in the federal circuit. The state, I believe, conceded in its brief that's not binding precedent on the courts, and they had some type of a theory, which I don't completely understand, that it's not binding on our courts, but it's binding on the police, and I'm really kind of lost at that distinction. But our position is that there couldn't be no good faith exception under Davis because there's no good faith reliance on binding precedent because there was no binding precedent. Thank you. And a big part of the state's argument has to do with the fact that Mr. Lefleur was on parole at the time, that the tracking device was affixed to the car and used. And under the state's theory, apparently people on parole have no rights, and that's clearly not the case. Wilson and Sampson, the U.S. Supreme Court case, both make clear that, sure, people on parole do have reduced rights, but they still have rights, and they have more rights than someone who's actually in prison. And so our position is, if you look at the parole agreement, which I have here, paragraph 10 says you shall consent to a search of your person, property, or residence under your control. So what this court did in Wilson and what the court did in Sampson was essentially said, well, since the defendant is required to consent when asked to a search in Wilson, it was a bedroom, and in Sampson it was a person, since he agreed to that, and it was the term of his release, and he's required to consent anyway, it's really he doesn't have a reasonable expectation to refuse the consent, in other words. But this is completely different. This court held in Wilson that that provision, that you shall consent to a search, is not prospective. It doesn't mean I hereby consent to all future searches of any kind. It means that when asked, I shall consent to a search. And by definition, if you're doing a secretive search, such as secretive GPS tracking, or if they would have, for example, I guess under the state's theory, they could put video cameras secretly and audio recording in Mr. Lafleur's bedroom, because that would be a search. So our position is that what makes his expectation reasonable is controlled by the parole agreement. And if it's not in the parole agreement, then he has every reason to believe that he retains that right. And the parole agreement's very intrusive. I mean, it says you shall consent to search of your person, property, or residence under your control. That's, there are very few rights that are retained, and this happens to be one of them. The state, he did not agree, and there's no reasonable interpretation of this document that he agreed to clandestine tracking of his movements by GPS monitor. And so, and also, if you look, even under the language, it refers to search. Well, it's been the state's position up until Jones that this wasn't even a search. So it makes no sense that there was some type of an agreement here that a GPS tracking at the time this agreement was entered into was agreed to be by the parties to be a search. And that's evidenced by the fact, when you look further down in the document, there's a provision for electronic monitoring for 90 days. Whether that refers to only an ankle bracelet or GPS monitoring, the fact is that if it's an ankle bracelet, it's still, they're considering that to be not a search included in paragraph 10. And something they deemed more intrusive that specifically put a provision. So our position is that his status as a parolee really is of no bearing whatsoever. Due to the fact that he never agreed or was put on any notice, his rights would be waived in that regard as far as GPS tracking. Do we have to look at reasonability? Sure. Yeah, and the reasonableness is controlled by the document. That's our position. And that's consistent with both Samson and Wilson, where both the search of the bedroom in Samson, he shall consent to a search of property or residence under his control. The search of the person in Wilson, the same thing, the search of your person. What about the, I understand there was a tip in this case. Does that have any bearing on? I would say that's favorable to us. Basically it's a complete without cause search. The tip was that he was suspected of committing burglaries because he was seen bringing property into his residence. I'd submit that bringing property into your residence is proof of absolutely nothing, not under any type of a reasonable suspicion or probable cause or anything. And that's what they ran with. And based on that, and that's another thing besides if they were really concerned that he had stolen property, they could have under this agreement asked for his consent and searched his property and whatever, but they didn't. They decided to sneak out and attach a GPS tracking device to someone else's car. They intruded on someone else's rights too, Ms. Powell's, in addition to my client's rights. So the parole here is of no import. Already established that the Davis exception does not apply. And what the appellate court did was fair. They just essentially said, well, this Jones decision is a new decision and the state makes a distinction. Well, it's not a newly created rule. It pretty much is. I mean, it was a dormant rule. And we cite a case in our case, Bird, where the appellate court gave the same relief to the state when they were, when that Supreme Court case of Gant was decided related to automobile searches. And they said, well, that's limited within the reach. And that was not how Belton had been interpreted. So they remanded it to give the state to establish whether or not the car was within reach. And so that's what we're asking for here. I don't think there's any dispute that an appellate court has the authority to remand a case for further hearing on more evidence. And it's fair because his theory down below was that his movements were being infringed on by the tracking device. It had nothing to do with the car. And as we point out in our brief, which is another part of our argument under Katz, is that this violates his reasonable expectation of privacy of his movements, not just the car, apart from any trespass. And if you look at Katz's analysis, which the Supreme Court and especially Justice Sotomayor in the Jones case, I believe five of the justices recognize that there is a Katz's reasonable expectation of privacy apart from this trespass analysis. So, you know, for example, if you're a passenger in a car and the police wanted to track, say, a celebrity in a limousine and a limousine company picks them up every day and the police are aware of this, so they put a tracking device on the limousine company knowing that wherever the limousine goes, they're going to be tracking the celebrity. Our position is that's a highly intrusive invasion of privacy given the intrusiveness of the GPS technology. And carrying over the Illinois Privacy Clause in our Constitution, that's in addition to the Fourth Amendment protections. And the concerns of the delegates in the 1970 Constitutional Convention were actually concerned about the possibility of technology progressing to the point where it's going to start further invading on people's privacy to the point where they specifically put a protection of, quote, invasions of privacy that's not included in the Constitution. And our position is that even if this court finds that there's not a tax violation under Illinois' Constitution given the Privacy Clause, that this is kind of exactly what they were fearing 30, 40 years ago or whatever, that now it's very intrusive, means that there's no manpower requirement required anymore. The police can just affix devices or even use GPS tracking devices that are already in the car and just have a computer monitor people's movements in theory, just hit a button and pop up where they've been for the past, who knows how long. And so our position is that the appellate court correctly ordered this to be remanded for a Jones hearing to establish Mr. LaFleur's interest in the car, which, by the way, there was some good evidence that he did have an interest in the car. The police put this device on the car solely to track Mr. LaFleur. And they knew him to drive the Kia. And, in fact, if you look at trial, I think it was a trial, it might have been another motion, the police actually saw him driving the Kia the same day of the robbery, later in the day. And he referred to, in other areas of the record, Ms. Powell as his wife, girlfriend and fiancee, there's evidence, it's not really clear. But clearly she's more than just an acquaintance. I believe the maintenance manager for the apartment complex testified at trial that they, meaning Powell and Mr. LaFleur, had a Kia. He gave the parking permit to Mr. LaFleur. It was on the apartment complex parking lot. So all these facts show that it wouldn't be futile for the court to essentially proceed on a Jones hearing. And it's already being remanded for a new trial anyway. So it's already down to the appellate court and it's the fair thing to do here as the appellate court held. So if there are no further questions? It appears so. I ask that you affirm that portion of the appellate court and also find that there is a CATS violation and a violation of the only privacy clause. Thank you. Your Honor, it's important to make clear the relevance of the MSR agreement in this case. The MSR agreement set forth various conditions which defendants had to comply with or his MSR would be revoked and he would go back to confinement in prison. So that's the relevance of whether or not he specifically violated the MSR agreement. If he had violated that MSR agreement by failing to consent, the remedy would have been the revocation of his MSR agreement and he would go back to prison. That's one category of the search of relevance of the search that occurred here. Whether or not this search was specifically agreed to by the MSR agreement. There's a whole separate category about what searches were reasonable. And in that case the search did not have to be specifically consented to by him under the MSR agreement. The issue is whether he had under the Fourth Amendment a legitimate expectation of privacy. Now the scope of the MSR agreement informs that question. And the question of whether there is a legitimate expectation of privacy for searches again has been answered by Wilson and Sampson. There neither search was consensual. In both cases the government conceded that the search wasn't consensual. And so it didn't fall under the exact wording of the MSR agreement. Nonetheless, the courts, this court and the Supreme Court held that the defendants had no legitimate expectation of privacy. And so the search was reasonable regardless of whether it fell under the exact wording of the MSR agreement. Turning second to the Davis issue. In Davis where the Supreme Court, the U.S. Supreme Court applied the good faith exception, we have a situation extremely close to the situation here. We have state police officers following federal circuit court law. So in Davis the precedent was a federal circuit court precedent, an 11th circuit precedent. The officers were state police officers. And the court held that the state police officers were in fact deterred by the federal court case. So this isn't an argument that's being made up anew in this case. This is instead an application of the situation that occurred in Davis. The only question is, the only difference is where the prosecution took place. So in that case the prosecution took place in federal court. And in this case the prosecution took place in state court. But defendant's own suggestion reveals how differentiating between those two would yield untenable results. He suggests that the state officers might be on a different footing if the prosecution happened in federal court. In other words, he suggests that officers should think differently about the Fourth Amendment while trying to predict where the prosecution would take place. That's not the kind of requirements that we ask police officers to make. And indeed it would just encourage the kind of form shopping which he expresses concern about. So Davis does apply, the Davis good faith exception applies to this case. If your honors have no further questions, again we ask this court to reverse that portion of the appellate court's judgment vacating the trial court's denial of the motion to suppress. Thank you. Case number 116799, People of the State of Illinois v. Keith W. Floor. It will be taken under advisement as agenda number six. Mr. Malmuth and Mr. Miller, thank you for your arguments today. You are excused at this time. Mr. Marshall, we will take a ten minute recess at this time.